
Statio Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5643 | **DATE** | 9/6/2001 |
| **CASE TITLE** | Nelson Taylor vs. Larry Massanri | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment is Granted. This case is remanded to the Commissioner for further action not inconsistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | *2* number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 0 7 2001 date docketed | *20* |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | EB docketing deputy initials | |
| | Mail AO 450 form. | 9/6/01 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| *7T/secy* courtroom deputy's initials | ED 7 FILED FOR DOCKETING 01 SEP -6 AM 10: 38 | *7T/secy* mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |



Nelson Taylor,                    )
                                  )
    Plaintiff,            )        No. 00 C 5643
                                  )
    v.                    )
                                  )        Magistrate Judge
Larry Massanari,[1] Acting        )        Arlander Keys
Commissioner of the Social        )
Security Administration,          )
                                  )
    Defendant.            )

## MEMORANDUM OPINION AND ORDER

    Plaintiff, Nelson Taylor, pursuant to 42 U.S.C. § 405(g),
moves this Court for summary judgment pursuant to Rule 56(a) of
the Federal Rules of Civil Procedure reversing the decision of
the Commissioner of Social Security ("Commissioner"), which found
that he was not disabled prior to the expiration of his insured
status on March 31, 1991.  (R. at 11-20.)  In the alternative,
Plaintiff seeks an order remanding the case to the Commissioner
for further proceedings.  For the reasons set forth below, the
Court grants Plaintiff's Motion for Summary Judgment in part,
remanding this case to the Commissioner for further proceedings.

---

    [1] Larry Massanari, Acting Commissioner of Social Security,
is substituted as defendant pursuant to Fed. R. Civ. P. 25(d)(1).

## PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") on May 1, 1993. The Commissioner ultimately granted Plaintiff's SSI application, putting Plaintiff into SSI pay status as of May 1, 1993, the date that Plaintiff filed his SSI application. (R. at 119.)

Plaintiff filed an application for Title II disability benefits on December 11, 1996, alleging a disability onset date of March 1, 1987, the last date Plaintiff was employed. (R. at 56-58, 210.) The application was denied initially and upon reconsideration. (R. at 23, 28, 210.) Plaintiff requested and received a hearing before ALJ B. Carlton Bailey Jr., on March 18, 1998. (R. at 35, 208.) Because Plaintiff was already in SSI pay status, and because Plaintiff's insured status for Title II benefits expired on March 31, 1991, the ALJ acknowledged that the only issue to be resolved was determining the onset date of Plaintiff's disability. (R. at 213.)

On September 11, 1998, the ALJ determined that Plaintiff was not disabled on or before March 31, 1991, the expiration of his insured status. (R. at 11-20.) On July 28, 2000, the Appeals Council denied Plaintiff's request for review, which stands as the Commissioner's final decision. (R. at 5-7.)

## STATEMENT OF FACTS

### A. Evidence At Plaintiff's Hearing

The file documenting Plaintiff's 1993 application for and award of SSI benefits was not available to the ALJ or Plaintiff's counsel at Plaintiff's March 18, 1998 hearing. (R. at 212-214). To date, there is no evidence that either party has reviewed this file.

The only evidence presented at Plaintiff's hearing was Plaintiff's testimony, the testimony of the Commissioner's medical expert, Dr. Abramson, and limited medical records. The Court will discuss this evidence in turn.

#### 1. Plaintiff's Testimony

At his hearing, Plaintiff testified that he was born in 1941 in Arkansas. (R. at 219.) He had a fifth grade education, and does not read or write very well. (R. at 246.) Plaintiff had worked at a steel mill as a forklift and machine operator for ten years when the mill closed in 1986. (R. at 238-39.) Shortly thereafter, Plaintiff took a job as a forklift operator for the Leaf Brand Company. (R. at 237-38.) On March 1, 1987, Plaintiff left this job, claiming that the repetitive foot movement required of a forklift operator caused him significant leg pain. (R. at 238.)

Plaintiff testified that, while he experienced some pain while working at the steel mill, the pain was not extreme. (R. at 238.)

3

But by early 1987, Plaintiff was experiencing difficultly even when walking. (R. at 221.) Plaintiff could walk approximately one-half block before his legs would cramp, requiring him to rest for approximately 20 minutes and to massage his legs. (R. at 222.) Plaintiff's pain prevented him from helping with chores around the house, visiting with friends, and taking part in favorite pastimes, such as hunting. (R. at 245.)

On May 1, 1993, Plaintiff applied for, and ultimately received, SSI benefits. (R. at 119.) In late 1993 or early 1994, Plaintiff developed a leg ulcer that would not heal. (R. at 225.) By 1994, Plaintiff could walk only ten or twelve steps before experiencing significant leg pain. (R. at 223.) In 1994, Plaintiff had femoral bypass surgery at St. Elizabeth's Hospital to alleviate his leg pain. Shortly thereafter, Plaintiff had corrective surgery to alleviate a stomach ailment.

### 2. Dr. Abramson's Testimony

At the ALJ's request, Dr. Abramson testified as a medical expert. Dr. Abramson was reluctant to give an opinion regarding the onset of Plaintiff's disability based upon the documentation he had received. (R. at 232.) Dr. Abramson admitted that he did not know what condition rendered Plaintiff disabled, (R. at 214), and later stated that the only way to determine the onset of Plaintiff's disability was to review the missing SSI file. (R. at

4

232.) Nevertheless, Dr. Abramson questioned Plaintiff at the hearing in an effort to render an opinion.

Dr. Abramson testified that it was apparent that by 1994, Plaintiff suffered from a very severe degree of arteriosclerosis obliterans, with a block in the abdominal aorta. (R. at 232-34.) Dr. Abramson noted that this condition did not develop suddenly, and instead progressed slowly, with sufficient time for new vessels to grow. (R. at 233-34.) Plaintiff also suffered from intermittent claudication, which causes pain when exercising the muscles. Dr. Abramson explained that operating foot controls, walking, and exercising the muscles could cause the pain Plaintiff had been experiencing. (R. at 236.)

Dr. Abramson noted that Plaintiff received treatment for a leg ulcer in 1994 that had been present for approximately six months. He speculated that poor circulation probably caused the ulcer to develop six months prior to that time. (R. at 233-34.) Therefore, Dr. Abramson felt comfortable in opining that Plaintiff's condition was probably disabling one year prior to Plaintiff's surgery, but he could not say whether the condition went back to 1987 without "some objective proof of that." (R. at 234.) Specifically, Dr. Abramson stated that he had "no way of knowing how long it takes. In some cases it takes three years, in some cases it may take longer or shorter depending on the metabolism . . . . All I know is that it didn't happen in six months. . . . Because a complete

5

occlusion of the aortic vifercation is a slow process." (R. at 236.)

### 3. Medical Records

Although Plaintiff's 1993 SSI application file was not available, the record does contain some medical records covering the period prior to the expiration of Plaintiff's insured status. These records indicate that Plaintiff was treated by the Chicago Hamlin Medical Center ("Hamlin") between 1985 and 1990. Between 1985 and 1988, Plaintiff visited Hamlin on eight occasions, complaining of such things as a cough, cold, dizziness, and a depressive reaction. (R. at 140-44). On December 1, 1986, Plaintiff complained of being nauseated and dizzy and he was referred to Belmont Hospital the next day to rule out an intra-abdominal tumor. (R. at 141.) The treatment note of December 15, 1986 is mostly illegible, but indicates that Plaintiff was to be released to return to work on January 5, 1987. The January 14, 1987 note reveals that Plaintiff complained only of a cough and cold, which he had experienced for one week. (R. at 140, 142.)

On January 9, 1989, Plaintiff complained of weight loss and dizziness. (R. at 137.) On January 7, 1990, Plaintiff visited Hamlin again, this time for cramping in his legs. (R. at 138.) Plaintiff complained that he experienced pain in his legs after

walking only one block.[2] The assessment was to "rule out" peripheral vascular disease. (R. at 138.) In addition, Plaintiff explained to the treating physician that he did not obtain the GI x-rays ordered the previous year because he could not afford the tests. (R. at 138.)

On February 5, 1991, Plaintiff again sought treatment at Hamlin for pain in his left leg. (R. at 136.) Hamlin records indicate that Plaintiff did not return to Hamlin again until May 28, 1993, when he claimed that he could not walk for more than one block without resting, was short of breath, walked with a cane, and had pain in his left leg. (R. at 135.)

According to the record, Plaintiff did not seek medical treatment again until more than one year later. Plaintiff was hospitalized at St. Elizabeth's Hospital from June 14, 1994 through July 1, 1994 due to abdominal aorta occlusion, ulcer of lower limbs, cellulitis, and abscesses of the leg and obstructive chronic bronchitis. (R. at 174.) Plaintiff was diagnosed with a non-healing ulcer of the left leg, severe vascular occlusive arterial disease, chronic bronchitis, and emphysema. (R. at 176.)

A June 17, 1994 vascular surgery consult report indicated long-standing history of claudication pain in the lower extremities, with hip pain for over six to seven months, and

_____

[2] The date of this visit is unknown, as the note on the record is illegible. It appears to be a continuation of the January 7, 1990 notes.

ulceration of the left leg. (R. at 192.) Plaintiff underwent an aorta-iliac femoral bypass and a repair of the blood vessels. (R. at 174.)

In August 1994, Plaintiff returned to St. Elizabeth's Hospital for a lysis of peritoneal adhesions, dilation of the colon, and lysis of perirenal or periureteral adhesions. (R. at 149.) CT findings were compatible with small bowel obstruction. (R. at 150.)

## B. The ALJ's Decision

On September 11, 1998, the ALJ issued his decision, finding that Plaintiff had failed to establish that he was disabled on or before March 31, 1991. (R. at 16.) The ALJ reviewed Plaintiff's personal and medical history before turning to Dr. Abramson's testimony. In summarizing Dr. Abramson's testimony, the ALJ wrote that Dr. Abramson stated that there is nothing in the record to establish the existence of a disabling impairment as early as 1991. (R. at 18.)

The ALJ then noted that, although Plaintiff had complained of cramping in his legs during a 1990 doctor's visit, Plaintiff's failure to seek follow-up medical treatment for thirteen months was "not consistent with someone who is experiencing a debilitating degree of pain and limitation." (R. at 18.) The ALJ also relied upon medical records from St. Elizabeth's Hospital, which referenced Plaintiff's "longstanding history of claudication" in

8

terms of months and not years. (R. at 18.) The ALJ further stated

that the lack of "objective medical evidence (i.e., clinical signs

and laboratory findings) establishing the existence of a medically

determinable impairment that might reasonably be expected to

produce the symptoms alleged," rendered Plaintiff's complaints "not

particularly credible." (R. at 18.) Therefore, the ALJ concluded

that Plaintiff's impairments were not "severe" within the meaning

of the regulations and that, therefore, an onset date on or before

March 31, 1991 could not be established.

## STANDARD OF REVIEW

In reviewing the Commissioner's (here the ALJ's) decision, the

Court may not decide facts anew, reweigh the evidence, or

substitute its own judgment for that of the Commissioner. *Herron*

*v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, the Court

must accept findings of fact that are supported by "substantial

evidence," 42 U.S.C. § 405(g), where substantial evidence is "'such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Herron,* 19 F.3d at 333 (quoting *Richardson*

*v. Perales*, 402 U.S. 389 (1971)).

The ALJ must consider all relevant evidence and may not select

and discuss only that evidence that favors his ultimate conclusion.

*Herron*, 19 F.3d at 333. Where conflicting evidence allows

reasonable minds to differ, the responsibility for determining

whether a claimant is disabled falls upon the Commissioner, not the

9

courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)*; see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which she finds more credible). The ALJ may not substitute his own lay opinion for that of the medical professionals. *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996).

This Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). This does not mean that the ALJ is entitled to unlimited judicial deference, however. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level. *See Herron*, 19 F.3d at 333*; see also Young v. Secretary of Health and Human Services*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate her reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review). The ALJ must build "an accurate and logical bridge" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Finally, although Plaintiff bears the burden of demonstrating his disability, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585

(7th Cir. 1991) (*quoting Smith v. Sec. Of HEW*, 587 F.2d 857, 860 (7th Cir. 1978)). "Failure to fulfill this obligation is 'good cause' to remand for gathering additional evidence." *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000) (finding that, if the ALJ found the evidence before him insufficient, he should have obtained more evidence.)

### Social Security Regulations

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2001). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2001); *see also Young*, 957 F.2d 386, 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4, after which the burden shifts to the Commissioner at step 5. *Id.*

11

Another regulation applies, however, when attempting to determine the onset date of a claimant's disability. SSR 83-20, 1983 WL 31249. Social Security Ruling ("SSR") 83-20 provides ALJs with an analytical framework for determining a disability onset date. *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987). Under SSR 83-20, an ALJ should consider three factors in determining an onset date: 1) the claimant's allegations; 2) the claimant's work history; and 3) medical and other evidence. *Id.; Stein v. Sullivan,* 892 F.2d 43, 46 (7th Cir. 1990)

The Ruling explains that the date a claimant alleges as an onset date should be the "starting point" of the ALJ's analysis. SSR 83-20, 1983 WL 31249 at *2. Moreover, the "day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." *Id.* However, "the primary element in the onset determination" is medical evidence; the onset date cannot be inconsistent with the medical evidence. *Id.* Courts have acknowledged that, in the case of slowly progressing impairments,

> it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

*Nolen v. Sullivan,* 939 F.2d 516, 519 (7th Cir. 1991) (citations omitted).

Where the medical evidence is sparse or fails to indicate a precise onset date, SRR 83-20 advises ALJs to refer to a medical advisor to assist in making the necessary inferences. *Id.* at *3. Finally, where the available evidence does not permit a reasonable inference, SSR 83-20 directs ALJs to obtain information from a claimant's "family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.*

## DISCUSSION

Plaintiff contends that the ALJ's decision that the onset of Plaintiff's disability was after March 31, 1991 is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ: 1) failed to apply SSR 83-20,[3] which pertains to determining the onset date of a disability; 2) improperly relied upon gaps in medical treatment in assessing the severity of Plaintiff's condition; 3) failed to properly develop the record; and 4) made an erroneous credibility determination.

The Court notes from the outset that, whether Plaintiff was disabled on or prior to March 31, 1991– the last date on which he

---

[3] Published SSRs are binding on all components of the SSA, including ALJs. *Warmouth v. Bowen,* 798 F.2d 1109, 1111 n.5 (7th Cir. 1986).

was insured for disability insurance benefits- is far from certain. In fact, based on the current medical records alone, a finding of disability could be difficult to make. In this regard, it is noted that the only medical records covering the period from 1987- when Plaintiff last worked- and March 31, 1991, are those from the Chicago Hamlin Medical Center. Plaintiff was seen twice in December, 1986 and once in January, 1987, and these appear to have been routine visits, with no significant problems reported. The next visit- on December 20, 1988- was also routine, and it appears that it was not until January 7, 1990 that Plaintiff first complained of pains and cramping in his legs. The next treatment note was not until February 5, 1991. Notwithstanding the foregoing, with regard to the ultimate issue of the disability onset date, the Court will remand the case to the Commissioner for further proceedings consistent with the analysis set forth below.

## A. The ALJ Failed to Apply SSR 83-20

The Court is troubled by several aspects of the ALJ's decision. First, in determining the onset date of Plaintiff's disability, the ALJ failed to apply SSR 83-20. Contrary to SSR 83-20, the ALJ quickly dismissed Plaintiff's allegation that the onset date of his disability was March 1, 1987 -- which was also the last day that Plaintiff worked. Although SSR 83-20 required the ALJ to accept this date unless it was inconsistent with the

medical evidence, the ALJ explicitly stated that, absent supporting medical evidence, he could not accept the onset date alleged by Plaintiff. Specifically, the ALJ stated that "[t]he doctor feels comfortable taking [the onset date of Plaintiff's disability] back to 1993 but we're talking here 1987 and that apparently is based upon when you stopped working. But as counselor knows here it isn't that your testimony's not credible but it has to be supported by medical tests." (R. at 235.)

This statement is contrary to the Commissioner's own regulations; SSR 83-20 specifically contemplates the possibility of determining an onset date absent corroborating medical documentation. *Lichter,* 814 F.2d at 435 (remanding adverse benefits decision where ALJ relied heavily upon lack of corroborating medical documentation and failed to properly apply SSR 83-20.)

Ruling 83-20 also directs ALJs to consult a medical advisor when the medical documentation is inadequate.[4] In this case, the

---

[4] While there are medical records documenting Plaintiff's doctors' visits in 1986, 1987, 1990, 1991, 1993, and 1994, these records are not so thorough as to define a specific onset date. *See Warwak v. Shalala,* No. 92 C 7645, 1994 WL 702637, at *5 (Dec. 14, 1994). Plaintiff's first complaints of leg pain appear in 1990, and reappear again in 1991, 1993, and 1994. Given the apparent importance that the ALJ repeatedly placed on corroborating medical documentation, however, the Court cannot determine whether the ALJ found that Plaintiff's alleged onset date was clearly inconsistent with the available medical evidence, or if he merely surmised that the absence of a contemporaneous diagnosis made finding an earlier onset date impossible. *Wilder v. Apfel,* 153 F.3d 799, 802-02 (7th Cir.

ALJ properly consulted Dr. Abramson. After questioning Plaintiff, Dr. Abramson stated that the only way to determine the onset date would be to locate records referencing "the absence of pulses . . . or reduction of pulses in the going. That's the only way you can tell. Or have some sort of test of circulation." (R. at 232.)

Dr. Abramson testified that the medical records showed that Plaintiff had an ulcer on his left leg for approximately six months prior to his surgery, that the ulcer probably developed six months prior to its appearance, and that the cause of the ulcer was impaired circulation. Therefore, despite his reluctance to give an opinion, (R. at 232,) Dr. Abramson felt comfortable setting the onset date one year prior to Plaintiff's 1994 surgery, in 1993.

When Plaintiff's counsel asked Dr. Abramson whether the onset date could have been three years prior to Plaintiff's surgery, Dr. Abramson conceded that "[i]n some cases it, [sic] it takes three years, in some cases it may take longer or shorter . . . . All I know is that it didn't happen in six months." (R. at 236.) Moreover, Dr. Abramson conceded that Plaintiff's complaints of pain while operating a forklift were consistent with a lack of circulation. (R. at 236.) Nevertheless, Dr. Abramson rejected as irrelevant Plaintiff's testimony that he experienced pain and difficulty walking in 1987, stating that "[Plaintiff] thinks that

1998) (absence of a contemporaneous diagnosis is not determinative.)

16

he . . . had difficulty beginning in '87, but you need some objective proof of that."  (R. at 234.)

Dr. Abramson was apparently under the same misapprehension as the ALJ, believing that Plaintiff was required to produce conclusive results from specific medical tests in order to establish an onset date on or before March 31, 1991.  Ruling 83-20 provides otherwise.  If the ALJ believed that the available medical documentation was insufficient, and in this case the ALJ and Dr. Abramson repeatedly stated that this was their belief, SSR 83-20 instructs the ALJ to contact the claimant's employer, family members, and friends for information that would assist in determining an onset date.  1983 WL 31249, at *3-4 (illustrating how interviewing a claimant's employer and friends can reveal pertinent information); *Lichter,* 814 F.2d at 435.  By failing to interview Plaintiff's previous employers, physicians, family members, and/or friends, the ALJ failed to follow the requirements of SSR 83-20.

Because the ALJ improperly rejected Plaintiff's subjective complaints, and because the ALJ failed to obtain testimony that might have helped shed light on the onset of Plaintiff's disability, the Court must conclude that his decision is not supported by substantial evidence.

## B. The ALJ Failed To Develop The Record

### 1. Gaps In Plaintiff's Medical Treatment

The ALJ's failure to further develop the record was particularly critical with regard to the gaps in Plaintiff's medical treatment. In determining that Plaintiff was not disabled on or before March 31, 1991, the ALJ relied heavily upon the fact that Plaintiff visited the doctor infrequently between 1990 and 1993. Although Plaintiff had first complained to a physician of leg cramps in January of 1990, he apparently did not seek medical treatment again until February of 1991. On February 5, 1991, Plaintiff again complained of pain in his left leg. Despite his alleged pain, Plaintiff did not seek medical treatment again until May 28, 1993-- almost 4 weeks after the date the SSA determined that Plaintiff was disabled. As such, the ALJ determined that Plaintiff's subjective complaints of pain were incredible.

Several courts have questioned the relevance of infrequent medical visits in determining when or whether a claimant is disabled. *See, e.g., Herron v. Shalala*, 19 F.3d 329, 336 n.11 (7th Cir. 1994) ("Lack of discipline, character, or fortitude in seeking medical treatment is not a defense to a claim for disability benefits.") Before using Plaintiff's failure to seek treatment to discount his complaints of pain, the ALJ should have considered the following four factors: 1) whether treatment would have restored Plaintiff's ability to work; 2) whether the treatment was

prescribed; 3) whether treatment was refused; and 4) whether the refusal was without justifiable reliance. *See Herron*, 19 F.3d at 336 n. 11 (*citing Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

In the instant case, the ALJ did not ask Plaintiff why he did not seek treatment more frequently if his pain was truly disabling. Had he done so, he may have learned that Plaintiff's financial situation prevented him from seeking treatment except in the most dire of circumstances. The record indicates that Plaintiff's limited financial resources had prevented him from seeking ordered treatment on at least one occasion, (R. at 137,) and that, even when Plaintiff's condition was considered disabling, he did not frequently seek treatment. Courts have recognized that lack of financial resources may provide a justifiable reason for not seeking medical treatment. *See, e.g., Caviness v. Apfel,* 4 F. Supp. 2d 813, 821 (S.D. Ind. 1998) (Plaintiff is not required to default on medical payments in order to maintain credibility with an ALJ.)

The Court acknowledges that it is possible that Plaintiff's infrequent doctors' visits are truly indicative of nondisabling pain. *Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988) (failure to seek medical treatment may cast doubt upon the seriousness of the plaintiff's condition.) However, there is no evidence in the record to support that conclusion. Because the ALJ

failed to question Plaintiff regarding his infrequent doctor's visits, the ALJ did not fulfill his duty to develop a full and fair record. *Smith*, 231 F.3d at 437.

## 2. The Missing SSI File

In 1993, Plaintiff applied for and eventually received SSI benefits. Although it is unlikely that this file contained significant medical records prior to 1993, the file apparently contained the results of an SSI ordered consultative evaluation that Plaintiff had submitted to in 1993. (R. at 213-14.) The ALJ, Plaintiff's counsel, and Dr. Abramson considered this file to be critical in determining the progression of Plaintiff's disability and, therefore, whether Plaintiff was disabled on or before March 31, 1991. (R. at 214-16, 218.) The ALJ admitted that, without the SSI file, he could not even be certain why Plaintiff was receiving SSI benefits. (R. at 214.) The ALJ stated repeatedly that he would acquire and consult this file, that he would allow Plaintiff's counsel an opportunity to address the file, and that he would take judicial notice of its contents. (R. at 246, 216.)

Although the record indicates that the ALJ requested the 1993 file on two occasions, he apparently did not receive the file prior to issuing his decision. Neither the ALJ's ruling nor the Record indicate why the ALJ proceeded without reviewing this file. The Court is not suggesting that the ALJ had an absolute duty to obtain the file, or that the ALJ could not issue a decision without it.

However, given the importance placed on the file, the ALJ should have explained why he proceeded without the file, and why the evidence before him was now adequate to render a decision as to Plaintiff's onset date.

In conclusion, the Court finds that the ALJ's failure to apply SSR 83-20, his insistence on medical documentation diagnosing Plaintiff's condition prior to March 31, 1991, and his failure to fully develop the record requires the Court to remand this case to the Commissioner. Upon remand, and in view of Plaintiff's testimony that he left his job as a forklift operator on March 1, 1987 because of his inability to operate the forklift due to leg pain, the ALJ might wish to, but is not required to, reconsider whether this case should be decided at the Step 2, non-severe step of the sequential evaluation.

## CONCLUSION

Having carefully reviewed the entire record, and for the reasons set forth above, the Court finds that the Commissioner's conclusion that Plaintiff was not disabled on or before March 31, 1991 is not supported by substantial evidence in the record as a whole. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby is, **GRANTED**. This case is remanded to the Commissioner for further action not inconsistent with this opinion.

Dated: September 6, 2001     ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge